GUILLERMO ATILES MOREU, MANAGER, EX REL. RAMÓN CHACÓN MARTÍNEZ, Plaintiffs and Appellees, *v.* JAMES D. MCCLURG ET AL., Defendants and Appellants.

No. 398. Decided March 26, 1963.

*F. Prieto Azúar* and *Antonio Simonpietri* for appellants. *Donald R. Dexter, R. Rivera Genaro,* and *Ramón Ferrer Delgado* for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

These facts occurred on March 5, 1958, when the amendment by addition to § 1802 of the Civil Code of Puerto Rico (1930), providing that in claim for damages, through fault or negligence, "concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity" (1956), was already in force.

The trial court found proved the following facts: "That on or about March 5, 1958, about 10:15 p.m., and at the intersection of state highway No. 2, kilometer 87, hectometer 6, and state highway No. 130, while coplaintiff Ramón Chacón Martínez was in the scope of his employment as fireman

on his way to extinguish a fire and operating a fire engine —Chevrolet truck 1957, license plate GE 1-065—at moderate speed, he was struck by a 1955 Studebaker motor vehicle, license plate 133–052, owned and operated by codefendant James D. McClurg at the time of the collision; that the night of the accident coplaintiff Ramón Chacón Martínez was driving the fire engine from the Hatillo fire station, sounding the siren which could be heard within a radius of five miles, until the moment codefendant McClurg collided with the fire engine; that coplaintiff Ramón Chacón Martínez reduced the speed of the fire engine as he approached the military road and did not see any vehicle lights on the military road announcing the proximity of vehicles crossing or about to cross the intersection; that according to the defense evidence, it was not raining the night of the accident and the windows of codefendant's automobile were closed, with the exception of one of the small lateral windows; that codefendant McClurg saw the light of the fire engine after reducing by 15 miles the speed of 45 miles at which he was traveling, that is, when his speed was 30 miles per hour, at a distance of 30 or 50 feet from the place of the collision, and he therefore had sufficient time to apply the brakes and avoid the collision; that the accident involved in this complaint was due solely and exclusively to the fault and negligence of codefendant James D. McClurg who was operating the above-described motor vehicle at an excessive speed without taking the necessary precautions to park on the right-hand side of the road, 'since the engine...operated by coplaintiff Ramón Chacón Martínez was sounding the signal with the siren before crossing at moderate speed the intersection of the highways where the accident occurred, and that notwithstanding the audible siren sound codefendant James D. McClurg did not slacken the speed nor stop or draw to the right, causing the automobile to run negligently into the fire engine.' "

The court concluded as a matter of law that: "The accident described in the complaint was due solely to the negligence of codefendant James D. McClurg, operator of the vehicle insured with Capital Fire & Casualty Co., without coplaintiff Ramón Chacón Martínez being guilty of *contributory negligence.*" (Italics ours.)

The law applicable to the case, according to the date of the accident, is § 17 of Act No. 279 of April 5, 1946, as amended by Act No. 492 of May 15, 1952; Act No. 96 of June 18, 1953—9 L.P.R.A. § 187, pp. 565–68—which provides: "(a) Persons operating motor vehicles on the public highways shall at all times exercise due care and take every reasonable precaution to insure the safety of persons and property... (g) a driver of a motor vehicle shall, on approaching an intersection, cede the right of way to every vehicle which may have entered said intersection from another street. The driver of a vehicle operated on a vicinal, municipal or private road shall cede the right of way to every motor vehicle operated on an insular road; *Provided,* That when both vehicles are operated on Commonwealth roads, the one coming from the road having less traffic shall cede the right of way to that coming from the road having more traffic. The preceding provisions of this clause shall apply when traffic is not regulated by traffic signals or traffic policemen. Every motor vehicle driver shall cede the right of way to fire engines, ambulances, and Police of Puerto Rico vehicles, when they are engaged in emergency activities, and when the drivers of said vehicles give audible signals, such as bells, sirens, or whistles; every driver shall, at the approach of said emergency vehicles sounding such audible signal, draw well to the right and stop the vehicle until the emergency vehicle has passed."

In his review before us defendant-appellant McClurg assigns the following errors: (1) The findings of fact of the trial court are not supported by the evidence and are ad-

verse thereto; (2) the trial court erred in concluding that appellant, driving at a speed of 30 miles per hour, could stop his vehicle at 30 or 50 feet after applying the brakes; (3) it erred in concluding that appellee was traveling at moderate speed, since the evidence showed that the violent impact produced by the fire engine removed the automobile from the road destroying it, and such physical evidence has a probative value per se; (4) it erred in concluding that appellant, who by a preferred right of way was already within the intersection, should have stopped his vehicle to the right; (5) it erred in failing to conclude or to attach importance (a) to appellee's admission that he did not observe the "stop" sign at the intersection, or (b) to the fact that the fire engine brakes had been defective; (6) it erred in awarding an excessive and confiscatory indemnity for damages, notwithstanding appellee's injuries were slight; (7) it erred in failing to admit in evidence an official letter which Dr. Nathan Rifkinson wrote to the State Insurance Fund informing that there were no neurological signs of incapacity; and (8) it erred in failing to apply the comparative negligence rule and to award compensation for damages compatible with appellee's degree of negligence.

█ 1. Appellant is right in that some of the trial court's findings of fact are not correlative with the preponderance of the evidence or with the evidence not contradicted by the opposing evidence. Some of the allegations, particularly those in quotation marks in the preceding recital, are mere reproductions of the allegations, as we shall see.

2. When these facts occurred the law which governed the speed permissible for crossing an intersection was § 15 of Act No. 279 of April 5, 1946, as amended by Act No. 1 of August 5, 1957 (Sp. Sess. Laws, p. 515), which provided a speed not to exceed 15 miles per hour when the driver of the vehicle can not see clearly the vehicles approaching or which may approach the intersection within a limit of 50 meters

in all directions, except in those intersections where traffic is controlled by traffic lights, in which case the driver having the right of way could proceed at the speed fixed for the urban zone (25 miles). Appellant McClurg testified that "shortly before approaching the intersection I was driving at about 45 miles per hour [permissible limit in a rural zone, according to § 15 *supra*]. I slackened the speed as I approached the intersection [Tr. Ev. 44]; apparently the intersection was clear" (Tr. Ev. 45). Upon cross-examination he testified that as he approached the intersection he was traveling at about 10 to 15 miles per hour (Tr. Ev. 51). The trial court's conclusion that McClurg was traveling at excessive speed is contrary to the evidence.

3. As to the speed at which the fire engine was traveling, the evidence contains the following assertions: Coplaintiff-appellee Chacón testified: "At about 10 p.m. a man, Luis Toledo, from the ward of Capáez of Hatillo, called up to inform that there was a fire in a sugar-cane field where many houses were in danger, and we went to render the service of extinguishing the fire" (Tr. Ev. 5). He further added: "Well, perhaps it was not going slowly, about 10 to 15 miles" (Tr. Ev. 12). Antonio Delgado, the other fire department employee who accompanied coplaintiff-appellee Chacón, testified: "We passed through the town [Hatillo] at 10 miles, then when we arrived there [the intersection] we slackened the speed" (Tr. Ev. 22). However, on cross-examination he testified: "Well, we passed through the town at 10 miles; when we came out of the town we were traveling at about 25 miles" (Tr. Ev. 24). Longinos Mercado, a businessman whose establishment is situated at the intersection of highway No. 2 and highway 130, where the accident occurred, the only disinterested witness, testified: "As I was about to close my business, I heard a siren warning... and when I saw that it was the firemen's car, the fire engine" (Tr. Ev. 37); the engine did not stop at the "stop" sign, but proceeded fast (Tr. Ev.

38). "The firemen's car collided with the Studebaker car, dragging it out of the road" (Tr. Ev. 39). Longinos Mercado further testified: The impact was quite violent (Tr. Ev. 39); there was one dead in the Studebaker car (Tr. Ev. 40), and "we took out McClurg unconscious from the car; first I had to take out the other dead, and placed him on a bus which brought him to Arecibo, and this man [McClurg] was trapped between the steering wheel and the door which was bent" (Tr. Ev. 40); "the engine lay across highway No. 130 and the car was over to this side between the military road and the sewer" (Tr. Ev. 41). McClurg testified: "As I entered the intersection there was a glare from a light to my right... I applied the brakes and swerved to my left... to avoid a collision because the car was coming quite fast [Tr. Ev. 45]. As I applied the brakes and swerved to the left, the car kept coming and the collision occurred" (Tr. Ev. 46). He then added that his only recollection was that the impact knocked him unconscious, quite a bad impact (Tr. Ev. 46).

From the direct assertions of the witnesses as well as from the inferences which may be drawn from the description of the impact, it is clear that the trial court's conclusion that the fire engine was operated at moderate speed is contrary to the evidence. *People* v. *Rivera*, 69 P.R.R. 500, 504 (Todd, Jr., 1949); *Pérez* v. *Santiago*, 56 P.R.R. 732, 736 (De Jesús, 1940); *Efret* v. *Quiñones*, 40 P.R.R. 183, 186 (Texidor, 1929).

4. Regarding appellant McClurg's duty to stop the motor vehicle on the right-hand side and yield the right of way to the fire engine, the evidence ought to show that the engine was at that moment on its way to perform a public emergency duty and that it was sounding the alarm devices. There is no doubt in this case that at the time of the accident the engine was on its way to extinguish a fire, and that as it crossed the intersection it was sounding the siren to warn other drivers of such public emergency duty. Coplaintiff-appellee

Chacón testified: "Well, coworker Antonio Delgado who was seated by my side and I left and he placed the foot on the siren and proceeded to the town" (Tr. Ev. 5–6) ; that the siren was sounding as they crossed (Tr. Ev. 6). The other employee who was riding in the fire engine testified that "he was sounding the siren since we left the fire station"; that that siren can be heard within a radius of five miles and that it was sounding when he slackened the speed in order to cross (Tr. Ev. 22) ; that it was more than 10 p.m. when they left the fire station and the accident occurred at 10:05 more or less. He further testified that they left the fire station between 10:05 and 10:10 (Tr. Ev. 23) ; that the distance between the Hatillo fire station and the scene of the accident was about one or two hectometers which may be covered between 10 and 5 minutes (Tr. Ev. 24). Witness Longinos Mercado, as we have seen, testified that as he was about to close his business he heard a siren and saw the firemen's car (Tr. Ev. 37) ; he said that the engine was sounding the siren and that it was heard quite far (Tr. Ev. 40). Appellant McClurg testified that he could not recall whether it was raining that night, that the glass windows of his automobile were up [closed] with the exception of the small window to the driver's right (Tr. Ev. 49). Referring to the possibility that he had heard the siren, he testified: "I would say that I could hear, I don't know exactly how to say it, you could hear, but it could be a dull sound"; that he could possibly hear some horn or a siren or alarm sounded by an ambulance, but that he did not hear before the accident the siren sounded by a vehicle (Tr. Ev. 50).

The version contained in the evidence of coplaintiff-appellee Chacón in the sense that the fire engine siren could be heard within a radius of five miles, seems not only exaggerated but also a premise which would require an ideal physical space in which the sound wave were not intercepted by other objects or solid bodies which tended to deaden it. In any event, within the rules of conjectural evidence it is possible to

infer, in view of the pertinent testimony of the only disinterested witness, that the engine was sounding the alarm device as it approached and crossed the intersection. Since this is so, McClurg's duty to stop on the right-hand side of the road along which he was traveling seems clear.

5. According to our existing negligence legislation, the trial court was bound, as alleged by codefendant-appellant, to make findings of fact on coplaintiff-appellee's failure to obey the "stop" warning sign located before approaching the intersection and on the defective condition of the brakes, bearing in mind that although § 17 *supra* of Act No. 279, as amended, provides that "every motor vehicle driver shall cede the right of way to fire engines," it is also the duty of fire engine drivers upon crossing a preferential right of way "to exercise care for the safety of the lives and property of others." *Vélez ex rel. González* v. *Atlas Line, infra.* Had it made those findings, there is no question that the trial court would have concluded that coplaintiff-appellee did not exercise due diligence and circumspection and that the fire engine brakes were worn out, that that day it was necessary to repair them twice, and that the other employee warned coplaintiff-appellee before the accident on the defective condition of the brakes, all of which shows clearly that in the comparison of faults coplaintiff-appellee can not be considered totally exempt from liability.

6–7. The attorney for codefendant–appellant McClurg is right in his contention that the compensation for damages awarded in this case is excessive and confiscatory when compared with the injuries sustained by coplaintiff-appellee Chacón.

Coplaintiff–appellee testified with respect to the injuries that he received "a wound on the head, bruises on this side and this left side, on a knee, and a wound on a finger" (Tr. Ev. 6) ; as to the injuries, "I don't feel very well yet... I

faint, feel pains on the head, on this side of the waist, I faint, suffer headaches, the sun bothers me" (Tr. Ev. 7) ; that the State Insurance Fund determined a 5 per cent incapacity of the knee (Tr. Ev. 7) ; that he resumed work as fireman one month later and that some times he drives the same engine, "some times I can not because I feel something in my head and I can't" (Tr. Ev. 17) ; that the State Insurance Fund paid him $150 for the incapacity in addition to the per diems.    Dr. José M. Rodríguez Quiñones testified that coplaintiff–appellee was confined in his clinic from March 5, 1958 to March 16, eleven days in all (Tr. Ev. 19) ; that "the patient was hospitalized because he had a contused wound on the frontoparietal region, a laceration on the fourth interdigital space of the left foot; multiple contusions, among them, on the left shoulder, the lumbar region and the left knee" (Tr. Ev. 19) ; that "I saw the patient a few days ago and he is in pretty good condition.    The only problem I would have to decide is the effect of the blow on the head" (Tr. Ev. 20) ; that "the blows to the head are almost always serious, but they may not be always serious, because of the effect on the encephalic mass, and that he could suffer some incapacity in the future" (Tr. Ev. 20). When asked whether the injured man could continue suffering "headaches, convulsions, the fainting spells which he claims, could be the result of that blow," the medical expert answered: "I can not say for sure, it could or could not" (Tr. Ev. 20) ; that it *can* have serious consequences in the future (Tr. Ev. 20–21).    The expert determination of these injuries was available to the trial court, but it disregarded the certificate of Dr. Nathan Rifkinson issued at the request of the State Insurance Fund informing that coplaintiff-appellee Chacón did not show neurological signs of incapacity as a result of the accident.

▮ The attorney for codefendant–appellant McClurg is also right in alleging that the trial court erred by its failure to admit in evidence such certificate.    According to the hold-

ing in *Negrón* v. *Corujo*, 67 P.R.R. 371, 373 (Marrero, 1947), the admission of public documents, records, or proceedings constitute an exception to the hearsay evidence because "said documents or records are usually made by persons having no motive to suppress or distort the truth... moreover, are made in the discharge of a public duty and almost always under the sanction of an official oath."

The $6,000 indemnity awarded to coplaintiff–appellee Chacón is not commensurate with the injuries sustained. It is well to point out that the State Insurance Fund only paid and claims in this action the sum of $306.93 for per diems, incapacity, X rays, traveling expenses, hospitalization and medical assistance. Before fixing the new compensation it is necessary to dispose of the last error assigned.

8. These facts occurred on March 5, 1958, during the effectiveness of the amendment to § 1802 of the Civil Code of Puerto Rico (1930 ed.) added by Act No. 28 of June 9, 1956, which provides with respect to the reparation of the damage caused through fault or negligence: "Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." The term "concurrent imprudence" is undoubtedly a felicitous term in legal lexicography, since as commented by MANRESA: "Man, an author has said, should subordinate all his actions to the rules and precepts of prudence." 12 MANRESA, *Comentarios al Código Civil Español* 639 (5th ed., Reus 1951). On our part, in *Pagán* v. *Guardiola*, 78 P.R.R. 372, 374 (Belaval, 1955), we held, following the language of a Spanish judgment: "The obligation to pay damages for a wrongful act flows, in the quasi-delictive sphere, from the lack of prudence or diligence which is normally due in the ambit of human coexistence."

When the amendment of "concurrent imprudence" was not yet in force, in *Vélez ex rel. González* v. *Atlas Line*, 78 P.R.R. 735, 737-38 (Belaval, 1955), we established for this class of accidents the following norm: "The driver of the am-

bulance had the right to assume that the road would be clear, not only because of the emergency activity in which he was engaged but also because of the audible signal which he was giving. The principal tutelary care in a situation such as this is by law imposed upon the operator of the vehicle engaged in a normal activity of transportation and not upon the operator of a vehicle engaged in emergency transportation. Although an emergency activity does not confer upon the driver of an ambulance the right to sweep away everything in his path, without exercising care for the safety of the lives and property of others, it does give him the right to preferential use of the right of way at a greater speed than would ordinarily apply to another operator of a transportation vehicle."

After the amendment of "concurrent imprudence" we believe that the norm continues to be the same, the same care by both parties even though a preferential right of way is recognized within the care to the person engaged in an emergency activity. This binds the trial courts to compare the faults as if the case were a common one, allowing at the time of exacting his liability some margin in favor of a driver engaged in an emergency activity.

The trial court's error consisted in considering this case as if it were still governed by the already superseded principle of the exclusion of liability where there is contributory negligence. Comparing the faults in this case, it is evident that the only fault for which codefendant-appellant McClurg could be held responsible is his failure to stop the vehicle in order to yield the right of way to the fire engine. If this had occurred while both were traveling on the same road and the proximity of the warning had been more audible, his imprudence would be greater. However, there are certain circumstances in this case which enable us to infer that the sound wave did not create that sensation of proximity which makes it more compulsory to adopt measures of security as rapidly as would have been advisable in a different situation.

■ At any rate, even in the assumption of total exclusion of faults, the compensation would be excessive. We think it is time to call the trial courts' attention to the need of weighing the damages in each case on a strict basis agreeable with the evidence, always endeavoring not to convert the indemnity for damages into an industry and not to be so injurious to our economy, *Toro* v. *Porto Rican & American Insurance Co.*, *ante*, pp. 625, 627 (Blanco Lugo, 1963), as was formerly the tendency not to duly compensate the damage. Using the words of our brother Mr. Justice Santana Becerra, we may add: "This mission of the judges [fixing damages] should be governed by sound judgment and reasonable and weighted standards in the evaluation of each case, with an objective view of the facts proved, so that the remedial sense of the compensation established in § 1802 be always preserved and that the accident will not be a motive of speculation or profit." *Valentín* v. *Commonwealth*, 84 P.R.R. 108, 118 (Santana Becerra, 1961).

This case is not proper for making a detailed apportionment of the compensation due each party, and, hence, of the compensation corresponding to coplaintiff–appellee Chacón, since the case was prosecuted on the assumption of liability excluded from the contributory negligence and the compensations are claimed in separate actions. Guided by a practical criterion which may not be at variance with substantial justice, we are of the opinion that the judgment should be modified awarding to the State Insurance Fund—to a certain extent an innocent interest—the total expenses incurred in the treatment of coplaintiff-appellee Chacón, namely the sum of $306.93, and in addition to that amount to award to coplaintiff–appellee Ramón Chacón Martínez the sum of $650, plus costs and $200 for attorney's fees.

The judgment will be modified accordingly.